MARIE A. SHOOK, Plaintiff-Appellant, *v.* RITA TINNY, Defendant (State Farm Fire & Casualty Co., Garnishee-Appellee).

Third District No. 3—83—0482

Opinion filed March 16, 1984.

Charles G. Roth, Julia A. Schmidt, and David J. Dubicki, all of Kavanagh, Scully, Sudow, White and Frederick, P.C., of Peoria, for appellant.

Robert H. Jennetten, of McConnell, Kennedy, Quinn & Johnston, of Peo-

ria, for appellee.

JUSTICE BARRY delivered the opinion of the court:

After plaintiff Marie Shook obtained a judgment of $26,800 against defendant Rita Tinny for personal injuries, plaintiff filed a garnishment action against defendant's insurer, State Farm Fire & Casualty Company. State Farm moved to dismiss the garnishment proceeding on the ground that coverage was excluded under the terms of its policy, and plaintiff has brought this appeal from the order of the circuit court of Peoria County, which granted the motion to dismiss.

Rita Tinny and her husband Chris Tinny owned a condominium in Peoria where they lived together until February 1, 1980, when Rita, who was a jewelry buyer for Montgomery Ward, accepted an employment opportunity in Chicago and moved to the Chicago area. Chris was a luggage salesman who traveled during the week and who was expecting a transfer to the Chicago area in April of 1980. The Tinnys had their condominium for sale and saw each other only on weekends. Rita was required to work on Saturday and Sunday, June 7 and 8, 1980, and she was not planning to come to Peoria for Chris' birthday on Saturday. Chris told her that he had to stay in Peoria for the weekend because of an open house the realtor had scheduled for the condominium. Rita decided to surprise Chris by driving to Peoria after work Saturday accompanied by a friend who would drive her back to Chicago in time for work Sunday morning.

When Rita arrived at the condominium about 9:30 p.m., she was surprised to see a large party in progress around an outdoor grill. There was a keg of beer and a large number of people on the premises. Chris had invited all the residents of the building to a party. Chris met Rita in the parking lot when she first drove up, and they exchanged a few words. He then disappeared for the remainder of the evening. Rita entered the condominium in a rage. She announced that the party was over and ordered everyone to leave. She threw several potted plants on the floor and broke them; she threw a birthday cake across a room; she removed all the telephones, draperies, and some of her husband's suits.

One of the guests was Marie Shook, a resident of the same building who had never previously met Chris Tinny. She testified she was outside when Rita arrived. She went into the kitchen to return the glass which she had been using when she encountered Rita. Rita told her to leave and then asked for the glass back. As she extended her arm to hand Rita the glass, some of the drink spilled onto Rita, and

Rita struck her in the face. According to Rita, Rita put her hand out to defend herself and when her hand came in contact with Marie's face, she gave a slight push. Marie, on the other hand, said she received a hard blow to the face with a fist or something hard which caused her to black out. When she regained consciousness, she was outside the apartment and bleeding profusely from her nose. She was treated at an emergency room for a fractured nose, and eventually had to have reconstructive surgery. There is permanent nasal damage. Both eyes were blackened, and Marie experienced a great deal of pain after the blow. At the time of the incident, Rita was 5 feet 2 inches tall and weighed 99 pounds.

Marie filed suit against Rita for damages. According to the record, after plaintiff filed an amended complaint alleging both negligence and wilful and wanton misconduct, defendant's attorney asked for an extension of time to respond because the attorney had been retained by State Farm and the amended complaint created a conflict of interest. Thereafter, there was a substitution of attorneys for defendant, and for the remainder of the trial she was represented by her personal attorney.

The jury found total damages of $40,000; found Rita responsible for 70% of the damages; found Marie responsible for 30%; and fixed Rita's portion at $26,800. The court entered judgment on the verdict.

Thereafter plaintiff filed a garnishment action against State Farm to collect the judgment under the Tinny's homeowner's policy which was in effect at the time of the incident. State Farm defended the garnishment action on the ground that this occurrence was excluded from coverage under a provision of the policy which excluded "bodily injury *** which is expected or intended by the insured." At the trial before the court, both Rita and Marie testified, and the report of proceedings from the negligence trial was introduced into evidence along with several pictures depicting Marie's injuries and the location of the incident. The trial court made written findings of fact, including a finding that Rita struck Marie a blow with her fist, that the blow "was delivered intentionally and with the expectation and intention to injure Marie," that the injuries were not covered by the policy of insurance, and that State Farm is not indebted to Marie. The trial court found for the defendant, and plaintiff appeals. We affirm.

■ Plaintiff's first contention is that State Farm was barred by the doctrine of collateral estoppel from denying coverage after the jury trial resulted in a finding of negligence liability against its insured, Rita Tinny. Plaintiff points out that under the terms of its policy, State Farm was required to defend a negligence action against its

insured, that no reservation of rights was given to its insured, and that no appeal was taken from the judgment in the personal injury action. State Farm argues that plaintiff waived the defense of collateral estoppel in this proceeding because it was neither pleaded nor argued in the trial court. The record discloses that plaintiff did mention the defense of *res judicata* (of which collateral estoppel is one branch) in her argument before the trial court and in her post-trial motion in this garnishment proceeding. Accordingly, for purposes of this appeal, we believe the trial court and the parties had sufficient notice of the issue to preserve it for consideration by this court.

■■ Plaintiff argues that State Farm defended without a reservation of rights. However, the record in this case is silent as to whether State Farm gave its insured a reservation of rights. What is clear is that State Farm recognized that there was a conflict between insurer and insured as a result of the allegations of the amended complaint, that State Farm expressed its intention to notify its insured of the conflict, and that thereafter defendant Rita Tinney was represented by her personal attorney and not the attorney previously retained by State Farm. These facts are similar to the situation in *Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335, where the insurance policy in question excluded from coverage injuries caused by assault and battery. In a personal injury action brought against the insured, the complaint alleged both battery and negligence, and thereby created conflicting interests between the insured and the insurer. After the plaintiff and the defendant entered into an agreement that the plaintiff would collect only from the insurance company, the defendant failed to defend, and a default judgment in favor of the plaintiff was entered. The plaintiff then filed a garnishment proceeding to collect the judgment from the insurer. The supreme court ruled that the insurer could assert noncoverage as a defense to the garnishment proceeding because of the conflict, and also ruled, *inter alia*, that the insurer was not required to provide a defense to the insured in such a conflict situation even though the allegations of the complaint established potential coverage.

In a case which preceded *Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335, the same conclusion was reached. Discussing the dilemma of the insurer in a case where a tort claim is brought against the insured in negligence but investigation indicates that the act was intentional, the court in *Cowan v. Insurance Co. of North America* (1974), 22 Ill. App. 3d 883, 891, 318 N.E.2d 315, 322, stated:

> "In instances where the insurer refuses to defend, the better-reasoned cases hold that the insurer is not bound by the prior

adjudication on questions of policy coverage."

The court in *Cowan* went on to explain that the binding effect of a judgment against the insured would not extend to matters outside the scope of the insurance contract. (The rule followed in *Cowan* and *Thornton* does not apply in cases where there is no conflict of interest between the insured and insurer.)

The insurance policy in *Cowan* contained an exclusionary clause identical to the one in the case before us. The underlying tort action was based on allegations of assault and battery, but the instructions to the jury were drafted in terms that permitted the jury to find either " '*** actual or deliberate intention to harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others.' " (*Cowan v. Insurance Co. of North America* (1974), 22 Ill. App. 3d 883, 895, 318 N.E.2d 315, 325.) The reviewing court concluded that since the instruction was worded in the disjunctive, the jury did not necessarily decide the issue of intentional injury. The court stated:

> "It is well-settled that in order for a previous adjudication to be conclusive, it must appear clearly and certainly that the identical and precise issue was decided in the former action." 22 Ill. App. 3d 883, 895, 318 N.E.2d 315, 325.

We think the same situation exists in the case at bar. The jury was instructed that plaintiff claimed the defendant was negligent in that she swung her right arm and hand without sufficient control or that she swung her right arm and hand at a speed greater than was then and there reasonable and proper for the safety of others. Neither this nor any other instruction advised the jury to consider whether plaintiff's injury was expected or intended by defendant, as the coverage exclusion in the policy provided. Thus, we think it clear that the jury made no finding as to intention and that there is no identity of issues between the personal injury action and the garnishment action. As a consequence, State Farm is not estopped from denying coverage in the latter proceeding.

■ Plaintiff next argues that the court erred in finding that the injury to defendant was intended by plaintiff. Plaintiff insists that a subjective standard must be applied to determine intent and that these injuries were the unintentional result from an intentional act. Considering defendant's testimony denying any intention to cause injury, plaintiff claims that the subjective intention of defendant was a matter of record and binding on State Farm. We agree that the factual question is one of defendant's intent. However, we do not agree that defendant's own testimony must be considered conclusive on the

issue under the circumstances of this case.

To fully respond we must examine the language of the policy provision which excludes coverage for "bodily injury *** which is expected or intended by the insured." The Illinois Supreme Court has recently discussed an exclusionary clause identical to the one in this case, as follows:

> "The terms 'intended' or 'expected' included in such clauses have not been treated as synonymous. Otherwise, no purpose would be served by including them within the clause. A greater degree of proof is required to establish intent than to establish expectation. [Citation.] Injuries which are of such a nature that they should have been reasonably anticipated by the insured are 'expected' injuries." (*Bay State Insurance Co. v. Wilson* (1983), 96 Ill. 2d 487, 494, 451 N.E.2d 880, 882.)

It was obviously reasonable for the trial court in the case at bar to consider the nature and extent of the injuries to plaintiff's face in determining that the defendant should have reasonably anticipated or expected injuries to result from the blow she inflicted. The trial court expressly rejected defendant's version of the events, and the court was within its prerogative as finder of fact in so doing. Plaintiff insists that State Farm was bound by defendant's uncontradicted testimony as to her intent, since State Farm called defendant as an adverse witness, but we cannot agree that the testimony was uncontradicted; the surrounding circumstances cast grave doubt upon defendant's veracity. The court was not required to believe defendant in the face of circumstantial evidence to the contrary and in view of plaintiff's testimony that she was struck by something hard, presumably a fist.

The classic statement of the fact-finding process is found in *People v. Biella* (1940), 374 Ill. 87, 89, 28 N.E.2d 111, 112, where the court said:

> "The circumstances under which the act in question was done usually serve to manifest to a great degree the intent of the actor and may overcome his declaration as to his intention, but he has the right to testify to his intention and to have the circumstances surrounding the act considered in connection with his testimony."

Here the trial court clearly considered the circumstances surrounding this incident. Defendant was enraged and was reacting violently to her real or imagined betrayal by her husband. She broke potted plants, threw the birthday cake, pulled down draperies, tore telephones from the wall, and ordered her husband's guests out of the

house, all of this prior to her encounter with plaintiff. Although she described her contact with plaintiff as a slight push, it was sufficient to do extensive damage to plaintiff's face. Plaintiff described the contact as with something hard, which caused a "pop" sound, and which knocked her unconscious. Considering the circumstances, we cannot say that the trial court erred in finding that the blow "was a very forceful one and was delivered intentionally and with the expectation and intention to injure Marie."

Plaintiff pursues the same argument further by contending that the findings of the trial court were contrary to the manifest weight of the evidence. As our previous discussion of the evidence indicates, we disagree. Considering the totality of the circumstances, the decision of the trial court was not contrary to the manifest weight of the evidence.

Judgment affirmed.

HEIPLE and STOUDER, JJ., concur.