SHELTER MUTUAL INSURANCE COMPANY, Plaintiff-Appellant, v. CHARLES L. BAILEY, Defendant and Counterclaimant-Appellee (Robert L. Keniley, Defendant-Appellee.)

Fifth District   No. 5—86—0251

Opinion filed August 27, 1987.

Stephen C. Mudge, of Reed, Armstrong, Gorman & Coffey, of Edwardsville, for appellant.

James P. Stiehl, of Belleville, for appellee Charles L. Bailey.

No brief filed for appellee Robert L. Keniley.

JUSTICE KASSERMAN delivered the opinion of the court:

The plaintiff, Shelter Mutual Insurance Company (Shelter), filed suit for declaratory judgment, requesting a determination as to whether it was obligated to defend and extend coverage to its named insured, Charles Bailey, one of the defendants. A motion for summary judgment was filed by the plaintiff, and a countermotion for summary judgment was filed by defendant Bailey. The defendant Charles Bailey was also the defendant in an underlying personal injury action brought by a Robert Keniley.

Hearing on the motions for summary judgment was stayed until the underlying lawsuit was resolved. Shelter's motion for summary judgment was denied. Counterclaimant Charles Bailey's motion for summary judgment was allowed. Shelter was ordered to pay the attorney fees and defense costs of defendant Charles Bailey's attorney. From that order, Shelter appeals.

The relevant facts are as follows: On August 28, 1980, Robert

Keniley filed a verified complaint alleging that Charles Bailey committed the offense of battery, specifically, "battery in that the above [Charles Bailey] did knowingly, without justification cause bodily harm to Robert E. Keniley in that he struck Robert E. Keniley in the face with his fist, knocking out one of the complainant's teeth." On November 6, 1980, Charles Bailey, who was defended by attorney James Stiehl, was found guilty of the offense of battery after a bench trial. Subsequent thereto, on July 10, 1981, Robert Keniley filed a civil suit against Charles Bailey in St. Clair County. The initial complaint alleged that the defendant committed reckless acts resulting in personal injuries to the plaintiff. Shelter Mutual Insurance Company, pursuant to a reservation of rights, retained Robert Schmeider to defend its insured, who defended the underlying suit to its conclusion. A motion to dismiss the original complaint was filed and allowed. An amended complaint, setting forth only allegations of negligence, was filed in September of 1981. From that date until August of 1985, a complaint alleging only negligence was on file against Charles Bailey. Shortly thereafter, the lawsuit was resolved.

Following the filing of the civil lawsuit, attorney Stiehl demanded that Shelter pay his attorney fees for the defense of the underlying personal injury lawsuit along with all necessary costs. Attorney Stiehl had also made this request by letter dated November 17, 1981, to attorney Robert Schmeider. Attorney Schmeider advised attorney Stiehl that inasmuch as the amended complaint did not contain any allegations of intentional tort, a conflict of interest did not exist and, therefore, Shelter was not obligated to pay his attorney fees. Shelter, by letter dated November 30, 1981, reiterated their position and indicated that they had not employed attorney Stiehl to represent the insured and would not pay his fees.

On January 27, 1982, Shelter filed its complaint for declaratory judgment setting forth, in part, that the automobile liability insurance policy issued to the defendant by Shelter provided in part the following exclusion: "Coverages A and B do not apply to: *** (b) Bodily injury or property damage caused intentionally by or at the direction of the insured" and also provided:

"1. COVERAGE A—Bodily Injury Liability; COVERAGE B—Property Damage Liability—The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

A. Bodily injury sustained by any person;

B. Property damage, including loss of use thereof, sustained by any person;

caused by accident ***."

The complaint for declaratory judgment also set forth a homeowner's insurance policy issued to the defendant which provided the following exclusions:

"This policy does not apply:

1. Under Coverage E—Personal Liability and Coverage F—Medical Payments to Others:

(f) to bodily injury or property damage which is either expected or intended from the standpoint of the Insured."

The homeowner's policy also provided:

"Coverage E—PERSONAL LIABILITY.

This Company agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an occurrence ***."

An answer to the complaint for declaratory judgment was filed by both Charles Bailey and Robert Keniley. Charles Bailey filed an affirmative defense setting forth that he had requested the right to control the conduct of the case and that the expenses of his defense be met by the plaintiff, Shelter. Defendant Bailey also filed a counterclaim asserting, pursuant to *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E. 2d 24, that he was entitled to select an attorney of his own choice. The affirmative defense and counterclaim were denied.

On March 19, 1982, defendant Bailey filed a motion to dismiss the declaratory judgment action. The motion was heard on April 15, 1982, and denied. The court, however, ordered that the action be stayed but that discovery would be permitted to proceed. On May 3, 1982, plaintiff filed a motion to reconsider and moved the court to set aside its stay and, further, filed a motion for summary judgment. Attached to the motion for summary judgment was a certified copy of the criminal court order finding the defendant guilty of battery. A motion for summary judgment was also filed by defendant Bailey. The motion to reconsider the stay of proceedings was denied on March 15, 1983. The matter remained stayed until September 19, 1985, when the motions for summary judgment filed by both plaintiff and defendant were argued. On October 11, 1985, the court entered an order denying plaintiff's motion for summary judgment. That same order allowed defendant-counterclaimant's motion for summary judgment and set the case for hearing for defendant Bailey to prove up his attorney fees and costs.

The hearing was conducted on February 11, 1986, on the issue of

attorney fees. Attorney James Stiehl testified at the hearing and his time sheet was marked as an exhibit. On examination, attorney Stiehl admitted that the time listed from November 3, 1980, through June 17, 1981, was time he spent on defendant Bailey's case prior to the filing of the civil suit. The time was attributed in part to the defense of the criminal charge. Attorney Stiehl testified that from September of 1981 through mid-August of 1985, only the cause of action for negligence was pending. In November or December of 1981, he demanded that he be allowed to control the conduct of the case and that his fees be borne by Shelter pursuant to the decision in *Maryland Casualty Co. v. Peppers.*

On March 21, 1986, the trial court entered an order finding that the defendant was entitled to attorney fees as per the bill of attorney Stiehl for the defense of the civil suit and, further, that he was entitled to attorney fees for the defense of the underlying criminal charge and entered judgment in favor of the defendant against plaintiff in the sum of $4,388.55. From that order, plaintiff Shelter appeals.

On appeal, plaintiff raises three issues: (1) whether Robert Keniley's personal injury complaint against defendant Bailey, alleging only negligence, created a conflict between the interests of defendant Bailey and his carrier, Shelter Mutual Insurance Company, entitling defendant to retain an attorney of his own choice at Shelter's expense, (2) whether Shelter should be required to pay the attorney fees incurred by the defendant-insured for the defense of the criminal charge of battery, which preceded the filing of the personal injury suit, and (3) whether Shelter was entitled to summary judgment as to whether Robert Keniley's injury was excluded from Shelter's insurance policies.

■■ ■ Turning to plaintiff's initial contention on appeal, we note that the law is well settled in Illinois that an insurer is obligated to defend those actions where the complaint alleges facts potentially within the coverage of the policy, even if the allegations are groundless, false or fraudulent. (*Thornton v. Paul* (1979), 74 Ill. 2d 132, 144, 384 N.E. 2d 335, 339.) Unless the complaint alleges facts which, if true, would exclude coverage, the potentiality of coverage is present and the insurer has a duty to defend the action. Underlying this rule is the principle that the duty of an insurer to defend is broader than the duty to pay. (*Graman v. Continental Casualty Co.* (1980), 87 Ill. App. 3d 896, 900, 409 N.E. 2d 387, 391.) In cases of potential coverage, where the insurer believes it has a valid exclusionary coverage defense, the insurer must either (1) secure a declaratory judgment of its rights while defending the potential insured under a reservation of

rights, or (2) defend the potential insured under a reservation of rights and adjudicate its coverage in a supplemental suit. (*Aetna Casualty & Surety Co. v. Coronet Insurance Co.* (1976), 44 Ill. App. 3d 744, 748, 358 N.E. 2d 914, 917.) Where the insurer fails to take either course of action, it will be estopped from raising exclusionary defenses. 44 Ill. App. 3d 744, 748, 358 N.E. 2d 914, 917; *Trovillion v. United States Fidelity & Guaranty Co.*(1985), 130 Ill. App. 3d 694, 474 N.E. 2d 953.

■■ The duty of an insurer to defend an action brought against its insured is to be determined solely from the allegations of the complaint. (*Thornton v. Paul* (1979), 74 Ill. 2d 132, 144, 384 N.E. 2d 335, 339.) Even if the insurer's independent investigation reveals that the statements contained in the complaint are totally false, as long as the complaint sets forth allegations of negligence, as in the instant case, the duty to defend arises. In the instant case, the only allegations contained in the complaint, as amended, were allegations of negligence. Plaintiff Shelter hired attorney Robert Schmeider to defend the allegations. However, as Shelter's investigation revealed that their insured, Charles Bailey, had been convicted of the offense of battery, an intentional tort, they elected, while defending their insured under a reservation of rights, to pursue a declaratory judgment action. The services of a separate law firm were retained for this purpose. However, the insured, Bailey, had retained the services of a separate attorney, James Stiehl, who had defended him in the criminal case. Attorney Stiehl notified plaintiff of his representation of Bailey and that he expected his fees to be paid by Shelter. He also demanded to be permitted the control of the defense of the personal injury suit. In support of this position, defendant relies upon the case of *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E. 2d 24.

■ We find that defendant's reliance upon *Maryland Casualty Co. v. Peppers* is misplaced. The ruling in *Maryland Casualty* is limited to those instances where a conflict of interest actually exists between the insured and the insurer, such as when the insured is sued under multiple theories of recovery, with some of the theories being covered by the policy and others not. (*Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 197-99, 355 N.E. 2d 24, 30-31.) In reviewing the law, the court in *O'Bannon v. Northern Petrochemical Co.* (1983), 113 Ill. App. 3d 734, 447 N.E. 2d 985, stated:

> "Generally, an insurer is required to defend an action against its insured whenever the complaint alleges facts potentially within coverage of the policy. This is true even where the insurer's own investigation reveals such allegations to be false. [Ci-

tation.] Where an insurer wrongfully refuses to defend its insured, it is estopped to deny policy coverage in a subsequent lawsuit by the insured or the insured's assignee. [Citation.]

There is an exception to the general rule, however, where a conflict of interest exists between the insurer and its insured. In such case the insurer is not permitted to participate in the defense itself. Instead, its obligation to provide a defense is satisfied by reimbursing the insured for the costs of independent counsel. [Citation.]" (113 Ill. App. 3d 734, 738, 447 N.E. 2d 985, 988-89.)

The insurance company in *O'Bannon* was seeking a declaration that a conflict of interest had prevented them from defending one of their insureds. The court rejected the argument and noted that the plaintiff's reliance on *Thornton v. Paul* was misplaced and that *Thornton* was "distinguishable." The court stated:

"In *Thornton*, the defendant putative insured was charged with both negligence and battery. Battery was outside policy coverage. Although both the insurer and the insured would have benefited from a finding that the insured was not liable at all, the insurer's interests would have been just as well served by a finding that the insured committed a battery. Such a finding would obviously have been in conflict with the insured's best interests." 113 Ill. App. 3d 734, 738, 447 N.E. 2d 985, 989.

Our review of *Thornton v. Paul* (1979), 74 Ill. 2d 132, 384 N.E. 2d 335, indicates that its holding, like the holding in *Maryland Casualty*, is limited to its facts. In *Thornton*, the plaintiff, Thornton, filed an action against Paul alleging that he had suffered injuries when Paul struck him in the head. The defendant's insurer, Illinois Founders Insurance Company, refused to defend the suit. Their investigation revealed that the occurrence was in fact a battery committed by Paul and Illinois Founders sent Paul a notice that it was reserving its rights. Illinois Founders retained counsel to investigate the incident underlying the suit which confirmed the occurrence was in fact a battery. Thornton amended his complaint to allege assault and battery in one count and negligence in another. The court stated that had Illinois Founders assumed the defense, it would have had the right to control the defense of the case and its interest would not necessarily lie in a finding of not guilty, but would have been just as well served by a finding that the defendant was guilty by virtue of having committed a battery upon the plaintiff. (74 Ill. 2d 132, 152, 384 N.E. 2d 335, 343.) The court emphasized that in "a conflict situation such as is presented

in this case, defending under a reservation of rights, *** does not solve the ethical question because the insurer's interests would be promoted by a finding that the insured had committed a battery." (74 Ill. 2d 132, 156, 384 N.E. 2d 335, 345.) Concluding, the court stated that while ordinarily an insurance company is required to defend a complaint based upon the allegations contained in the complaint, it was not repudiating

> "the suggestions of *Sims v. Illinois National Casualty Co.* (1963), 63 Ill. App. 2d 184, 199, [193 N.E. 2d 123,] that in case of doubt the insurer can seek a declaratory judgment as to its obligations and rights, or defend on a reservation of rights ***. Our holding in this case is not a repudiation of the holding of *Sims*, but is a narrow exception to that holding applicable only under conditions such as are presented in the present case." 74 Ill. 2d 132, 159, 384 N.E. 2d 335, 346.

Subsequent decisions interpreting *Thornton* and *Maryland Casualty* have limited the holding in those cases to true conflicts of interest. As the court in *O'Bannon* emphasized, "[i]t is clear, however, that an insurer's interest in negating policy coverage does not in itself create a sufficient conflict to excuse the insurer from conducting the defense." (*O'Bannon v. Northern Petrochemical Co.* (1983), 113 Ill. App. 3d 734, 739, 447 N.E. 2d 985, 989.) Therefore, merely because an insurer has an interest in negating policy coverage does not in itself create a sufficient conflict to excuse the insurer from conducting the defense. The court noted that a contrary holding would not only overturn the estoppel rule set forth in *Sims v. Illinois National Casualty Co.*, but would in effect nullify the insurer's contractual obligation to defend whenever it could show a potential application of some policy exclusion. 113 Ill. App. 3d 734, 739, 447 N.E. 2d 985, 989-90.

The proper procedure for an insurance company to follow was recently discussed in *Shook v. Tinny* (1984), 122 Ill. App. 3d 741, 461 N.E. 2d 642. In *Shook*, the plaintiff filed suit against the defendant-insured for personal injuries. Subsequent to the filing of the complaint, an amended complaint was filed alleging both negligence and wilful and wanton misconduct. At that time, defendant's attorney asked for an extension of time to withdraw as the amended complaint "created a conflict of interest." The court, noting that there was a conflict between the insurer and insured as a result of the allegations of the amended complaint, stated:

> "These facts are similar to the situation in *Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E. 2d 335, where the insurance policy in question excluded from coverage injuries caused by as-

sault and battery. In a personal injury action brought against the insured, the complaint alleged both battery and negligence, and thereby created conflicting interests between the insured and the insurer." 122 Ill. App. 3d 741, 744, 461 N.E. 2d 642, 644-45.

■■ In the case at bar, we note that the only allegations against the insured in the amended complaint (between August of 1981 and August of 1985) were allegations of negligence. No alternative theories of liability were presented. Plaintiff was obligated and in fact had a duty to defend its insured. Unlike *Maryland Casualty* and *Thornton,* plaintiff was not confronted with alternative theories of recovery and, therefore, could not shift the liability from one theory, such as negligence, which would have been covered, to another theory, such as battery or intentional conduct, for which there was no coverage. The interests of the insured and the insurer were identical (*i.e.,* to defeat the claim or to minimize the amount of damages recovered). There is nothing in the allegations of the complaint showing the interests of the insurer would be furthered by providing a less-than-vigorous defense to the complaint. A vigorous defense would have benefitted both Bailey and Shelter. Bailey and Shelter would have both been equally served by a not guilty verdict or by a verdict minimizing the amount of damages.

■■ A conflict of interest cannot be inferred merely because plaintiff Shelter, through separate counsel, sought to defeat coverage. (*O'Bannon v. Northern Petrochemical Co.* (1983), 113 Ill. App. 3d 734, 739, 447 N.E. 2d 985, 989.) If this court were to hold in the case at bar that even though the plaintiff in the personal injury suit had only filed a negligence action, the mere potential of a conflict of interest would have permitted defendant to hire an attorney of his own choosing, then in any negligence action an insured could claim that an intentional or wilful and wanton count could be added to the complaint at any time, thereby requiring the insurance company to turn the defense over to another attorney. A conflict cannot be inferred merely because an insurance company is asserting noncoverage in a separate suit. The test is whether or not there are conflicting interests based upon the allegations found in the complaint.

Inasmuch as we find that a conflict of interest did not exist on the face of the amended complaint filed in September of 1981, defendant was not entitled to reimbursement of his attorney fees and expenses.

■■ ■ The next issue we address is whether plaintiff Shelter should be required to pay the attorney fees incurred by the defendant-insured for the defense of the criminal charge of battery, which pre-

ceded the filing of the personal injury suit. The trial court, in its order dated March 21, 1986, found that the defendant, Charles Bailey, was entitled to reimbursement of attorney fees incurred in the sum of $765 in the defense of the underlying criminal battery charge. Defendant-counterclaimant in his counterclaim filed on February 18, 1982, did not seek, specifically, the recovery of fees incurred in the defense of the criminal case. However, during the hearing conducted on attorney fees, defendant's counsel submitted time sheets which included the time he spent on the defense of the criminal charge and made a claim for those charges. The underlying criminal charge was the offense of battery. (Ill. Rev. Stat. 1985, ch. 38, par. 12—3(a)(1).) The battery complaint was never submitted to plaintiff Shelter for defense. The defendant Bailey individually retained attorney James Stiehl to defend him.

In Illinois, the insurer has a duty to defend only when the complaint alleges facts which bring the case potentially within the policy coverage. (*Aetna Casualty & Surety Co. v. Freyer* (1980), 89 Ill. App. 3d 617, 621, 411 N.E. 2d 1157, 1160.) It is generally recognized that an insurer has no obligation to defend against a complaint alleging solely an assault and battery or another intentionally inflicted injury or property damage and not also alleging negligence. (89 Ill. App. 3d 617, 621, 411 N.E. 2d 1157, 1160.) Malice or an intention to injure is the gist of an action for assault and battery and for this reason, claims for damages arising out of an assault and battery are not within policy coverage. 89 Ill. App. 3d 617, 622, 411 N.E. 2d 1157, 1161.

In addition, we note that only suits for damages are to be defended under the policies involved in the instant case. A criminal complaint does not seek damages. It is penal in nature. Furthermore, the automobile liability and homeowner's insurance policies in the instant case provide that the "Company shall defend any suit alleging such bodily injury or property damage and seeking damages." In addition, the automobile policy provided that coverages A and B (bodily injury) do not apply to "[b]odily injury or property damage caused intentionally by or at the direction of the insured." The homeowners policy provided: "This policy does not apply: 1. Under Coverage E—Personal Liability and Coverage F—Medical Payments to Others: *** to bodily injury or property damage which is either expected or intended from the standpoint of the Insured."

■ Since the insurance policy in the instant case provided only for the defense of suits seeking damages and as the criminal complaint in this case did not request damages and, further, since there

are no allegations on the face of the criminal complaint setting forth a cause of action for negligence, we find that the plaintiff Shelter, under no reasonable argument, can be required to pay the defense expenses incurred for the defense of the criminal charge.

Plaintiff's third and final contention on appeal is that it was entitled to summary judgment because there was no genuine issue of material fact as to whether the tort plaintiff's injury was covered by the plaintiff Shelter's insurance policy.

■■ ■ It is the duty of the insurer to defend any claim under a pleading which might possibly fall within the scope of the policy coverage and where an insurer believes the policy does not provide coverage, it must either secure a declaratory judgment as to its rights and obligations before or pending trial of the original action or defend under a reservation of rights. (*Trovillion v. United States Fidelity & Guaranty Co.* (1985), 130 Ill. App. 3d 694, 700, 474 N.E. 2d 953, 958.) In the instant case, plaintiff Shelter retained the services of an attorney to represent defendant Charles Bailey under a reservation of rights. In addition, it filed a declaratory judgment action. Subsequent thereto, the court stayed, over the objection of Shelter, the proceedings until the underlying civil suit could be resolved. Plaintiff filed a motion to reconsider and a motion for summary judgment. Attached to the motion for summary judgment was a certified copy of a record indicating that in the cause of People of the State of Illinois v. Charles L. Bailey, No. 80—CM—3093, the defendant had been convicted after a nonjury trial in which testimony was heard on the offense of battery. The defendant replied with a motion for summary judgment of his own. No counteraffidavits were filed by the defendant, nor did the defendant in his motion for summary judgment deny that he had committed a battery. In fact, in his deposition, Bailey admitted striking the tort-plaintiff, Robert Keniley.

Pursuant to *Thornton v. Paul* (1979), 74 Ill. 2d 132, 384 N.E. 2d 335, a defendant's conviction of the criminal charge of battery "is reliable evidence of the fact that he did in truth commit a battery." (74 Ill. 2d 132, 150, 384 N.E. 2d 335, 342.) In *Thornton*, the supreme court adopted the rationale of *Smith v. Andrews* (1964), 54 Ill. App. 2d 51, 203 N.E. 2d 160, which provided that a criminal conviction of battery is *prima facie* evidence that a party's striking of the plaintiff constituted a battery. (*Thornton v. Paul* (1979), 74 Ill. 2d 132, 151, 384 N.E. 2d 335, 343.) *Prima facie* evidence is evidence which is sufficient to authorize a finding on the matter in issue unless contradicted or explained. (*Johnson v. Pendergast* (1923), 308 Ill. 255, 262, 139 N.E. 407, 409.) If there is no evidence to contradict a *prima facie*

case, it becomes conclusive and justifies a verdict. *Vischer v. Northwestern Elevated R.R. Co.* (1912), 256 Ill. 572, 578, 100 N.E. 270, 272.

In the instant case, the automobile liability insurance policy issued to defendant stated under "Exclusions," the following:

"Coverages A and B do not apply to:
*** (b) Bodily injury or property damage caused intentionally by or at the direction of the insured."

The above-mentioned policy also provided the following:

"1. COVERAGE A—Bodily Injury Liability; COVERAGE B—Property Damage Liability—The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:
A. Bodily injury sustained by any person;
B. Property damage, including loss of use thereof, sustained by any person;
caused by *accident* ***." (Emphasis added.)

The homeowner's insurance policy had the following exclusionary language:

"This policy does not apply:
1. Under Coverage E—Personal Liability and Coverage F—Medical Payments to Others:
(f) to bodily injury or property damage which is either expected or intended from the standpoint of the Insured."

The homeowner's policy also provided:

"Coverage E—PERSONAL LIABILITY:
This Company agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an *occurrence.* ***" (Emphasis added.)

The homeowner's policy defined "occurrence" as "an accident, including injurious exposure to conditions, which results, during the policy term, in bodily injury or property damage."

The supreme court in *Thornton v. Illinois Founders Insurance Co.* (1981), 84 Ill. 2d 365, 418 N.E. 2d 744, considered language similar to language in the instant case and stated that the record showed that the evidence was not sufficient to overcome the *"prima facie* evidence that a battery occurred." (84 Ill. 2d 365, 372, 418 N.E. 2d 744, 748.) In a similar case, *Mid America Fire & Marine Insurance Co. v. Smith* (1982), 109 Ill. App. 3d 1121, 441 N.E. 2d 949, the court entered summary declaratory judgment in favor of the plaintiff-insurer.

The plaintiff-insurer had filed a suit seeking a declaration that it had no duty to defend the defendant, Osborne, in an underlying suit brought by Smith. The court noted that the undisputed evidence before it showed that during an altercation between Osborne and Smith, Osborne kicked Smith in the head, causing injury to Smith. (109 Ill. App. 3d 1121, 1122, 441 N.E. 2d 949, 950.) The policy in *Mid America Fire* provided no coverage for damages for "bodily injury or property damage *** [c]aused intentionally by or at the direction of an insured." (109 Ill. App. 3d 1121, 1122, 441 N.E 2d 949, 950.) The appellate court affirmed the summary judgment in favor of the insurer, noting that it need not determine whether or not Osborne's actions constituted an "accident" because they found as a matter of law the exclusionary clause was applicable. The court emphasized that a tort-defendant "who is found to have intentionally struck the plaintiff is deemed to have intended the ordinary consequences of his voluntary actions." 109 Ill. App. 3d 1121, 1123, 441 N.E. 2d 949, 951.

Another case with exclusionary clause language similar to the instant case is *Bay State Insurance Co. v. Wilson* (1983), 96 Ill. 2d 487, 451 N.E. 2d 880. The policy in that case provided that it did not apply "to bodily injury or property damage which is either *expected* or *intended* from the standpoint of the insured." (Emphasis in original.) (96 Ill. 2d 487, 491, 451 N.E. 2d 880, 881.) In *Bay State*, the supreme court affirmed the appellate court and held that the nature and elements of the insured's criminal conviction for aggravated battery, together with the factual circumstances in the civil case, compelled the determination, as a matter of law, that the insured either intended or expected to injure the tort-plaintiff, and thus the exclusionary clause of the homeowner's policy was applicable, thereby prohibiting coverage for a shooting incident. 96 Ill. 2d 487, 493-94, 451 N.E. 2d 880, 882-883.

■■ Section 2—1005 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005) states that summary judgment "shall be rendered without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The purpose of summary judgment is to determine whether any genuine issue of material fact exists and to summarily dispose of the cases where none does exist so as to avoid congestion of trial calendars and the expense of unnecessary trials. *Mid America Fire & Marine Insurance Co. v. Smith* (1982), 109 Ill. App. 3d 1121, 1123, 441 N.E. 2d 949, 950.

In the instant case, we conclude that defendant's conviction on a

criminal charge of battery is *prima facie* evidence that defendant's conduct was outside the coverage of the insurance policies. The record in the case at bar discloses a conviction of the defendant for the offense of battery after a bench trial. At no time in his deposition did defendant Bailey claim that he unintentionally injured the tort-plaintiff, Robert Keniley. In fact, Bailey, in his deposition, admitted striking Mr. Keniley. Furthermore, defendant filed no counteraffidavits, nor, in his motion for summary judgment, did he deny that he committed a battery.

We find on the basis of the record before us that the tort-defendant, Bailey, intentionally struck the tort-plaintiff, Keniley, and must be deemed to have intended the natural consequences of his act. Therefore, the exclusionary clause of the insurance policy is applicable, and plaintiff Shelter owed no duty to defend Bailey in the underlying suit brought by Keniley, nor did Shelter owe a duty to indemnify Bailey for any judgment or settlement arising from that suit. Summary judgment should have been entered in favor of plaintiff Shelter.

For the reasons stated we reverse the order of the trial court granting defendant-counterclaimant Charles Bailey's motion for summary judgment ordering plaintiff Shelter to pay the attorney fees and defense costs of Charles Bailey's attorney. Further, we hereby enter a summary judgment in favor of plaintiff Shelter and against defendant Bailey according to our authority pursuant to Supreme Court Rule 366(a)(5) (107 Ill. 2d R. 366(a)(5)).

Reversed; summary judgment entered.

KARNS, P.J., and LEWIS,* J., concur.

---

*Justice Lewis replaces Justice Jones, who retired after the cause was taken under advisement.