AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,
Plaintiff and Appellant,

v.

Bradley Alan PURDY; D.L. and J.L., and D.L. as Guardian ad Litem of C.L. and A.L., Minors, Defendants and Appellees.

No. 17507.

Supreme Court of South Dakota.

Argued Dec. 3, 1991.

Decided March 25, 1992.

Rehearing Denied April 29, 1992.

Douglas M. Deibert, Cadwell, Sanford & Deibert, Sioux Falls, for plaintiff and appellant.

Donald P. Knudsen, Gunderson, Palmer, Goodsell & Nelson, Rapid City, for defendants and appellees.

Patrick K. Duffy, Rodney W. Schlauger, Bradley, McCullen, Butler, Foye & Simmons, Rapid City, for defendant and appellee Purdy.

SABERS, Justice.

Insurer (American Family) appeals a determination that it has a duty to defend and to pay for expected or intended injury arising from sexual contact. We reverse.

### FACTS

Bradley Purdy (Purdy) sexually molested A.L. on approximately fifteen occasions when A.L. was between 4 and 6 years of age. Purdy also sexually molested C.L., A.L.'s older brother, on three occasions. The molestation of both children consisted of Purdy fondling their genitals, there was no evidence of any oral or anal penetration.

These incidents occurred in Rapid City, South Dakota, during a time period when Purdy was a student at Brigham Young University in Provo, Utah. He also

spent a period of time in Germany. However, Purdy considered himself a resident of his parents' household in Rapid City. Thus, Purdy meets the definition of "insured" under his parents' homeowner's policy.

A.L. described four of the incidents with Purdy. Three occurred in the children's home with Purdy shutting the bedroom door, sitting against it with A.L. between his legs and then rubbing A.L.'s genitals for about 10 minutes. Each of the four described incidents ended with Purdy asking A.L. if it felt good, to which A.L. responded "No." On the final described incident Purdy threatened A.L. not to tell his parents. Purdy followed a similar pattern with C.L. and on one occasion, although no apparent threats were made, Purdy asked C.L. if he were okay.

Purdy was criminally prosecuted for these acts in 1986. Purdy received a suspended imposition of sentence and satisfied the terms imposed by the court. The children's parents (Parents) filed this civil action in their own right and as guardians of the children against Purdy and his parents.[1] Parents alleged that Purdy "negligently and without the intent to harm, touched and fondled the [children] in an indecent manner."

American Family brought a declaratory judgment action claiming it had no duty to defend or indemnify Purdy for the claims contained in the complaint. American Family twice moved for summary judgment and both motions were denied. A court trial was held. The issue was whether the policy, which excluded coverage for any bodily injury which is either "expected or intended" by the insured, provided coverage and a duty to defend.

The testimony of psychologist Dr. Fred McCall–Perez, was offered to dispute the allegation that Purdy intended to harm the children as a result of his conduct. Dr. McCall–Perez testified that in his opinion, Purdy did not intend to injure nor expect his conduct to harm the children. This opinion was based upon his determination that Purdy has a very narcissistic or self-centered personality, that Purdy felt the history of his own abuse had not affected him in any adverse way, that Purdy's pedophile behavior was unconscious—similar to a bad habit, and that Purdy viewed his acts as an expression of love.

American Family offered the testimony of psychologist Dr. Michael McGrath to challenge the opinion of Dr. McCall–Perez. Dr. McGrath testified that there was insufficient foundation to determine Purdy's expectations or intent. However, Dr. McGrath testified that it was equally possible that Purdy expected or intended harm as it was that no expectation or intent of harm existed. The testimony of Purdy, A.L. and C.L. was received by deposition. The court found that not only did Purdy not expect or intend to harm the children, but that to Purdy, the fondling was a form of love and would benefit the children.[2] The court concluded that American Family was obligated to defend Purdy and to pay up to policy limits for any judgment rendered against him. American Family appeals, claiming the court erred in denying summary judgment and erred as a matter of law in concluding that the policy exclusion did not apply.

## 1. EXPECTED OR INTENDED INJURY

The question is whether the trial court erred or was clearly erroneous in determining that Purdy neither expected or intended harm from his sexual contacts with the children. The homeowner's policy, under which Purdy is an insured, con-

1. Purdy's parents were dismissed on summary judgment.

2. The trial court's Findings of Fact:

. . . . .

5. Purdy's impulsive/compulsive behavior, combined with his narcissistic personality and his pedophile mentality caused Purdy to impulsively or compulsively act out sexually under circumstances where anxieties or fears became intense.

. . . . .

7. Purdy believed that the fondling of the . . . children was a form of love and friendship.
8. Purdy believed that the fondling of the . . . children would actually benefit the children in the future, or that it certainly would not harm the children.

tains a provision excluding coverage for "bodily injury or property damage ... which is expected or intended by any insured." When an insurer seeks to invoke a policy exclusion as a means of avoiding coverage, the insurer has the burden of proving that the exclusion applies. *Western Cas. & Sur. Co. v. Anderson*, 273 N.W.2d 203, 205 (S.D.1979). For the exclusion to apply in this case, it must be shown that Purdy expected or intended *injury* to the children—not merely the acts of molestation.

> It surely is not the *act* of the insured which must be expected or intended for the [exclusion] to take effect.

*Tri–State Co. of Minnesota v. Bollinger*, 476 N.W.2d 697, 701 (S.D.1991) (emphasis original).

The majority of jurisdictions that have addressed this issue have held that through the very nature of acts of criminal sexual contact or rape, injury is either inherent or the intent to injure will be inferred as a matter of law.[3] In *Western Nat. Assur. Co. v. Hecker*, 43 Wash.App. 816, 719 P.2d 954, 960 (1986), the court held "that an act of forcible oral intercourse is an act of such a character that an intent to cause injury can be inferred *as a matter of law*." (em-

phasis original). The exclusion in the perpetrator's homeowner's policy stated that coverage would not extend to "liability ... caused intentionally by ... any insured." *Id.* 719 P.2d at 957. In *Rodriquez by Brennan v. Williams*, 42 Wash.App. 633, 713 P.2d 135 (1986) two cases were consolidated for appeal. Both cases dealt with father/stepfather's sexual contact with his child/stepchild. The court held that "[a]cts of this nature are of such a character that an intention to inflict injury can be inferred as a matter of law." *Id.* 713 P.2d at 138. Both policies in *Rodriquez* excluded coverage for injury "expected or intended." *Id.* at 137.

In *CNA Ins. Co. v. McGinnis*, 282 Ark. 90, 666 S.W.2d 689 (1984), the insured/stepfather sexually assaulted and abused his stepdaughter. The court, in holding that the exclusion applied stated "that for a stepfather in such a situation 'to claim that he did not intend to cause injury, flies in the face of all reason, common sense and experience.'" *Id.* 666 S.W.2d at 691. In *Vermont Mut. Ins. Co. v. Malcolm*, 128 N.H. 521, 517 A.2d 800 (1986), the court held that the sexual assault committed by the insured on an 11–year old boy was not an "occurrence" within the policy and

**3.** *See, e.g., State Farm Fire & Cas. Co. v. Smith*, 907 F.2d 900 (9th Cir.1990); *Foremost Ins. Co. v. Weetman*, 726 F.Supp. 618 (W.D.Pa.1989); *Allstate Ins. Co. v. Thomas*, 684 F.Supp. 1056 (W.D.Okla.1988); *Allstate Ins. Co. v. Roelfs*, 698 F.Supp. 815 (D.Alaska 1987); *Allstate Ins. Co. v. Foster*, 693 F.Supp. 886 (D.Nev.1988); *Allstate Ins. Co. v. Jack S.*, 709 F.Supp. 963 (D.Nev.1989); *CNA Ins. Co. v. McGinnis*, 282 Ark. 90, 666 S.W.2d 689 (1984); *Twin City Fire Ins. Co. v. Doe*, 163 Ariz. 388, 788 P.2d 121 (App.1989); *J.C. Penney Cas. Ins. Co. v. M.K.*, 52 Cal.3d 1009, 278 Cal.Rptr. 64, 804 P.2d 689 (1991); *Allstate Ins. Co. v. Troelstrup*, 789 P.2d 415 (Colo.1990); *Landis v. Allstate Ins. Co.*, 546 So.2d 1051 (Fla.1989); *Allstate Ins. Co. v. Jarvis*, 195 Ga.App. 335, 393 S.E.2d 489 (1990); *Roe v. State Farm Fire & Cas. Co.*, 188 Ga.App. 368, 373 S.E.2d 23 (1988); *Scudder v. Hanover Ins. Co.*, 201 Ill.App.3d 921, 147 Ill.Dec. 386, 559 N.E.2d 559 (1990); *Altena v. United Fire & Cas. Co.*, 422 N.W.2d 485 (Iowa 1988); *Perreault v. Maine Bonding & Cas. Co.*, 568 A.2d 1100 (Me.1990); *Harpy v. Nationwide Mutual Fire Ins.*, 76 Md.App. 474, 545 A.2d 718 (1988); *Worcester Ins. v. Fells Acres Day School*, 408 Mass. 393, 558 N.E.2d 958 (1990); *State Mut. Ins. Co. v. Russell*, 185 Mich.App. 521, 462 N.W.2d 785 (1990); *Auto–Owners Ins. Co. v.*

*Gardipey*, 173 Mich.App. 711, 434 N.W.2d 220 (1988); *Linebaugh v. Berdish*, 144 Mich.App. 750, 376 N.W.2d 400 (1985); *Estate of Lehmann by Lehmann v. Metzger*, 355 N.W.2d 425 (Minn. 1984); *State Farm Fire & Cas. Co. v. Williams*, 355 N.W.2d 421 (Minn.1984); *Horace Mann Ins. Co. v. Ind. Sch. Dist.*, 355 N.W.2d 413 (Minn. 1984); *Fireman's Fund Ins. Co. v. Hill*, 314 N.W.2d 834 (Minn.1982); *Illinois Farmers Ins. Co. v. Judith G.*, 379 N.W.2d 638 (Minn.App. 1986); *Mutual Service Cas. Ins. Co. v. Puhl*, 354 N.W.2d 900 (Minn.App.1984); *New Hampshire Ins. Group v. Strecker*, 244 Mont. 478, 798 P.2d 130 (Mont.1990); *State Farm Fire & Cas. v. van Gorder*, 235 Neb. 355, 455 N.W.2d 543 (1990); *Vermont Mut. Ins. Co. v. Malcolm*, 128 N.H. 521, 517 A.2d 800 (1986); *Atlantic Employers Ins. Co. v. Tots & Toddlers*, 239 N.J.Super. 276, 571 A.2d 300 (1990) *cert. denied*, 122 N.J. 147, 584 A.2d 218 (1990); *Western Nat. Assur. Co. v. Hecker*, 43 Wash.App. 816, 719 P.2d 954 (1986); *Rodriguez by Brennan v. Williams*, 42 Wash.App. 633, 713 P.2d 135 (1986); *Horace Mann Ins. Co. v. Leeber*, 180 W.Va. 375, 376 S.E.2d 581 (1988); *N.N. v. Moraine Mut. Ins. Co.*, 153 Wis.2d 84, 450 N.W.2d 445 (1990); *K.A.G. by Carson v. Stanford*, 148 Wis.2d 158, 434 N.W.2d 790 (App. 1988).

therefore not covered.[4]  In reaching this conclusion, the court stated:

> The assaults were inherently injurious in the most obvious sense that they could not be performed upon a boy without appalling effects on his mind as well as forbidden contacts with his body.  This common understanding of the nature of such acts is beyond reasonable dispute and consistent with the legislative classifications of the acts within the most serious category of sex offenses[.]

*Id.* 517 A.2d at 802–3 (citations omitted).

In *Linebaugh v. Berdish,* 144 Mich.App. 750, 376 N.W.2d 400 (1985), the court held that:

> [E]ngaging in sexual penetration with an underage female would be an ... (intentional act) and the intent to injure or harm can be inferred as a matter of law from the alleged sexual penetration of said child.  Thus, the exclusion in the insurance policy applies to the facts in the instant case.

*Id.* 376 N.W.2d at 405.  The homeowner's policy in *Linebaugh* contained the exclusion for "injury ... intentionally caused by ... the Insured."  *Id.* at 402.  In *Fireman's Fund Ins. Co. v. Hill,* 314 N.W.2d 834 (Minn.1982), the court held that criminal sexual contact by the insured with a foster child "was such that an intention to inflict injury can be inferred as a matter of law."  *Id.* at 835.  Therefore, the *Hill* court held that the policy provision excluding "bodily injury ... which is either expected or intended from the standpoint of the insured" applied.  *Id.*

■  Generally, the matter of coverage should be determined on a case by case basis as a question of fact after a consideration of all competent evidence by the fact finder.  The classic statement of the fact finding process appears in *Shook v. Tinny,* 122 Ill.App.3d 741, 78 Ill.Dec. 58, 461 N.E.2d 642 (1984), as follows:

The circumstances under which the act in question was done usually serve to manifest to a greater degree the intent of the actor and may overcome his declaration as to his intention, but he has the right to testify to his intention and to have the circumstances surrounding the act considered in connection with his testimony.

*Id.* 78 Ill.Dec. at 62, 461 N.E.2d at 646 (quoting *People v. Biella,* 374 Ill. 87, 28 N.E.2d 111, 112 (1940)).  However, the majority view in criminal sexual contact cases is to infer, as a matter of law, that harm was expected or intended.  We find the majority position persuasive.

■  Purdy claims that the recent case of *Tri–State,* is dispositive in this case.  Purdy claims that this policy language and *Tri–State* establish that the court must determine whether the injury, rather than the act, was expected or intended from the standpoint of the insured.  Although Purdy is correct under this policy language, this issue is determined from all the acts and conduct of the insured and not simply from his after the fact statements as to his expectations or intentions.[5]

We agree with American Family that *Tri–State* is factually distinguishable from this case.  *Tri–State* involved a spur of the moment fight between two former friends both of whom had been drinking.  The host attempted to remove the guest from his home by striking him, a fight ensued which eventually resulted in a broken ankle for the guest—a result which may have been unexpected or unintended from an intentional blow.  In contrast, this case involves repeated deliberate sexual contacts with young boys over a four year period.  American Family argues that if injury was not *intended* in the strict sense, at the very least, injury, adverse consequences, emotional stress, or other harm is certainly expected by a child molester.

In examining the facts of this case, we note that: Purdy was an intelligent young

---

**4.**  By so holding, the *Vermont Mut.* court did not address the policy provision excluding coverage for expected or intended injury.

**5.**  Although we agree that the factual question is one of insured's intent, we do not agree that insured's own testimony must be considered conclusive on the issue under the circumstances of this case.

*Shook,* 78 Ill.Dec. at 61, 461 N.E.2d at 645.

man, who graduated from high school with honors. As a freshman at B.Y.U. he had a grade point average of 3.2. He was a victim of sexual contact himself when he was 10 to 11 years old. He stated that his prior victimization caused him considerable mental pain over the years including guilt, fear, shame and embarrassment. He could never bring himself to discuss this with his parents, despite what he considered a good relationship.

When initiating sexual contact with the children, Purdy thought about his own experiences. Following each contact with the children, he told himself he wouldn't and shouldn't do it again. Purdy stated that he knew no good would result from these contacts with the children—either for himself or for them. In addition, as indicated above, Purdy closed and blocked the door and then held and sexually abused the children. He also bribed or threatened them not to tell their parents and, at the conclusion of one incident, inquired whether C.L. was okay. Purdy's testimony was received by way of deposition.

> We have repeatedly held that the clearly erroneous rule does not apply to evidence presented by a deposition or other means where the witness does not appear before the trial judge. There is no presumption in favor of the trial court's determination. It is our duty to review the evidence and determine the issues involved as though presented here in the first instance.

*State v. Abourezk*, 359 N.W.2d 137, 142 (S.D.1984) (citations omitted). Therefore, despite the testimony of Purdy and the Affidavit of Dr. McCall–Perez, it is clear that Purdy was aware of the harmful effects of such conduct. In addition, Purdy cannot claim a version of the facts more favorable to himself than his own testimony. *Trammell v. Prairie States Ins. Co.*, 473 N.W.2d 460, 463 (S.D.1991); *Waddell v. Dewey County Bank*, 471 N.W.2d 591, 595 n. 3 (S.D.1991); *Miller v. Stevens*, 63 S.D. 10, 256 N.W. 152, 155 (1934).

The trial court's memorandum opinion stated that summary judgment would be proper only if as a matter of law it could rule that Purdy expected or intended harm to the children. The court stated that based upon Purdy's testimony, that he did not intend to harm the children, and upon the Affidavit of Dr. McCall–Perez, in which he stated Purdy "does not intend to harm the victims of his act," a genuine issue of material fact existed—i.e. whether Purdy expected or intended to harm the children through his actions. Although the trial court's analysis is correct under our summary judgment cases, *Groseth Intern., Inc. v. Tenneco, Inc.*, 410 N.W.2d 159, 164 (S.D.1987); *Wilson v. Great Northern Railway. Co.*, 83 S.D. 207, 157 N.W.2d 19, 21 (1968), we carve an exception to this general rule for criminal sexual contact cases and infer as a matter of law that harm was expected or intended.

We rule that this insured either expected or intended injury to these victims from his sexual contact with them. Therefore, despite the testimony of Purdy and the Affidavit of Dr. McCall–Perez, we hold these acts of criminal sexual contact are of such a nature that the intention or expectation to inflict bodily injury will be inferred as a matter of law. The exclusion for bodily injury either "expected or intended" in this policy applies to these facts. Since the exclusion applies, there is no coverage under the policy and American Family has no duty to defend Purdy in the underlying action. We reverse the trial court's denial of summary judgment.

MILLER, C.J., and WUEST, HENDERSON and AMUNDSON, JJ., concur.