**Mike YANG, Plaintiff–Appellant,**

v.

**Paul HARDIN, Defendant–Appellee.**

No. 93–2934.

United States Court of Appeals, Seventh Circuit.

Argued July 6, 1994.

Decided Sept. 28, 1994.

John Y.E. Lee (argued), Kristen E. Crisp, Donald V. Jernberg, Oppenheimer, Wolff & Donnelly, Chicago, IL, Theresa Fehringer Couri, Oppenheimer, Wolff & Donnelly, St. Paul, MN, for plaintiff-appellant.

Paul J. Hardin, pro se.

Before BAUER, COFFEY, and KANNE, Circuit Judges.

BAUER, Circuit Judge.

Following an incident involving two Chicago police officers, for which both officers received felony convictions, Mike Yang filed this action pursuant to 42 U.S.C. § 1983 with supplemental state common law claims. Both officers named as defendants, Kenneth Brown and Paul Hardin, defaulted. Accepting as true the liability evidence offered by Yang, the district court awarded damages against Officer Brown in the amount of $229,-658.10, plus attorney's fees pursuant to 42 U.S.C. § 1988. The court, however, concluded that, as a matter of law, Officer Hardin was not liable for violating § 1983, nor for assault or false imprisonment. Yang appeals the ruling in favor of Officer Hardin.

### Factual Background

On January 8, 1991, at approximately 11:00 p.m., Mike Yang, co-owner of a south-side shoe store, received a call from his alarm company notifying him that the store had been burglarized. Yang called his brother, Myung and an employee, Bob. The defendants, uniformed police officers employed by the Chicago Police Department, had already arrived at the store when Yang got there. While Yang and his employee and brother busied themselves with repairing the shattered front display window, Officer Hardin prepared a police report by the front door of the store, adjacent to the broken window. Officer Brown entered the store to investigate. While inside the store looking for a board to repair the window, employee Bob noticed that Officer Brown was perusing the store in the manner of a shoplifter. Bob alerted Yang to this. As Officers Brown and Hardin began to leave, Yang noticed a bulge in Officer Brown's jacket. Believing that Officer Brown had stolen some merchandise, Yang approached the officer and requested that the merchandise be returned. At first, Officer Brown denied that he had taken any merchandise. But after a discussion that escalated into an argument, Officer Brown reached into his jacket and pulled out a pair of "L.A. Raiders" shorts and threw them at Yang. Officers Brown and Hardin then proceeded to enter their police car to drive away. When Yang followed, Officer Brown

shoved Yang. Throughout the confrontation, Officer Hardin stood by the passenger door of the squad car. He did not speak or intervene in any manner despite Yang's repeated requests for Officer Hardin to call the police sergeant.

In an attempt to prevent Officer Brown from leaving, Yang held onto the driver's side door of the squad car to keep it open so that Officer Brown could not drive off. However, Officer Brown drove anyway, with the driver's side door ajar and Yang hanging onto the car. Officer Brown drove fast and recklessly in a zig-zagging pattern, braking and accelerating, in an attempt to throw Yang off. Officer Brown also repeatedly struck Yang in the ribs with his left elbow. Yang asserts that he was unable to let go of the car without being run over. Throughout the drive, Officer Hardin sat in the passenger seat. Officer Hardin did not say anything or in any way attempt to intervene. The squad car traveled, with Yang hanging on, more than two full city blocks until two men on the side-walk saw what was happening and ran out to the street to stop the police car. Yang let go when the car stopped. Officer Brown then got out of the car and punched Yang in the face, knocking him to the ground. Meanwhile, Yang's brother, who had run after the squad car, arrived at the scene. Officer Brown knocked Myung Yang to the ground.

Throughout these events, Officer Hardin did not call the sergeant or attempt to stop Officer Brown in any way. However, as the Yang brothers lay in the street, Officer Hardin got out of the passenger seat of the squad car, drew his gun, pointed it at the brothers and shouted obscenities at them. The Yangs froze. Officers Hardin and Brown got back in the police car and drove away.

Yang pressed criminal charges against both officers. Officer Brown entered a plea and was convicted of official misconduct, a class 3 felony under Illinois criminal law. See 720 I.L.C.S. 5/33–3. Officer Hardin was convicted at a bench trial of three felonies: theft, official misconduct and aggravated assault. Yang also filed this action under 42 U.S.C. § 1983 with supplemental state law claims of common law false imprisonment, negligent and intentional infliction of emotional distress, assault and battery. Both Officers Hardin and Brown defaulted. The district court found against Officer Brown and ordered damages in the amount of: $9,658.10 for medical bills, $35,000 for physical injuries, $60,000 for lost income, $75,000 for emotional and psychological injuries, and $50,000 in punitive damages—in total $229,-658.10. Attorney's fees against Officer Brown pursuant to 42 U.S.C. § 1988 were also awarded. The district court concluded that, as a matter of law, Officer Hardin was not liable for violating section 1983, nor for the state common law claims. Yang appeals.

### Analysis

#### A. Section 1983

■ Liability under § 1983 requires proof of two essential elements: that the conduct complained of (1) "was committed by a person acting under color of state law" and (2) "deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds by Daniels v. Williams,* 474 U.S. 327, 331–32, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986). In the present case there is no dispute that Yang has proved the first element. The district court found that both Officers Brown and Hardin acted under color of state law. They were on duty, wearing Chicago police uniforms, driving a marked squad car and were investigating a crime when the incident occurred. The crux of this case is whether Officer Hardin's failure to intervene deprived Yang of his liberty rights under the Due Process Clause of the Fourteenth Amendment and his rights under the Fourth Amendment to be free from unreasonable seizure. *See, e.g., Gilmere v. City of Atlanta,* 774 F.2d 1495, 1500–02 (11th Cir. 1985) (police liable under § 1983 on substantive due process theory for using excessive police force against decedent), *cert. denied,* 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986); *Mathis v. Parks,* 741 F.Supp. 567, 570 (E.D.N.C.1990) (Fourth Amendment seizure occurs when government actors restrain

liberty of citizen by means of physical force or show of authority).

■ Omissions as well as actions may violate civil rights. Generally, however, the Constitution creates only negative duties for state actors. *See, e.g., Archie v. City of Racine,* 826 F.2d 480, 486 (7th Cir.1987) (Fourteenth Amendment does not create a judicially enforceable right to a minimum level of governmental services), *aff'd en banc,* 847 F.2d 1211 (1988), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989). However, under certain circumstances a state actor's failure to intervene renders him or her culpable under § 1983. *See, e.g., White v. Rochford,* 592 F.2d 381, 383 (7th Cir.1979) (police officers liable for exposing children to danger by leaving them unattended in a car parked on the highway after lawfully arresting their guardian); *Byrd v. Brishke,* 466 F.2d 6, 10 (7th Cir.1972) (under the Civil Rights Act, damages are recoverable both for misfeasance and nonfeasance); *Gagnon v. Ball,* 696 F.2d 17, 21 (2d Cir.1982) (officer liable for failing to intervene in false arrest); *Byrd v. Clark,* 783 F.2d 1002, 1007 (11th Cir.1986) (remanded for determination on whether defendant police officer had opportunity to intervene to prevent unprovoked beating inflicted by fellow officer); *Webb v. Hiykel,* 713 F.2d 405, 408 (8th Cir.1983) (police officer liable for failing to intervene when other officers used unnecessary force against plaintiff); *cf. Bruner v. Dunaway,* 684 F.2d 422, 426 (6th Cir.1982) (not necessary to demonstrate that officer actively participated in striking plaintiff), *cert. denied,* 459 U.S. 1171, 103 S.Ct. 816, 74 L.Ed.2d 1014 (1983).

■ *Byrd v. Brishke* remains the seminal case in this circuit on the duty of an officer to intervene to prevent summary punishment. In *Brishke,* this court held that "one who is given a badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge."[1] 466 F.2d at 11. This responsibility to intervene applies equally to supervisory and nonsupervisory officers. *Id.* An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring. *Anderson,* 17 F.3d at 556; *accord Byrd v. Clark,* 783 F.2d at 1006–07.

■ The district court orally ruled in favor of Officer Hardin. *See* Tr. of Summation Proceedings at 30 (June 4, 1993) (hereafter "Tr."). The court found that the facts alleged by Yang did not demonstrate the availability of a reasonable time for Officer Hardin to intervene, or a reasonable likelihood of successful intervention. *See* Tr. at 11 ("not a 1983 violation to fail to make unavailing efforts or efforts that have no chance of success"). This finding is clearly erroneous. Although Yang's complaint fails to *explicitly* specify the existence of an opportunity for Officer Hardin to have intervened, the facts demonstrate several opportunities during which Hardin could have acted. At a minimum Officer Hardin could have called for a backup, called for help, or at least cautioned Officer Brown to stop. In fact, Officer Hardin should have arrested Officer Brown. However, in this regard, we defer to the district court's assertion that it may have

---

1. *Brishke* was decided prior to 1986 when mere negligent conduct by a government official constituted a violation of the due process clause. *See Parratt,* 451 U.S. at 536–37, 101 S.Ct. at 1913. The Supreme Court overruled *Parratt* and held that a violation of the due process clause requires proof that a government official acted with intentional disregard. *Daniels,* 474 U.S. at 330–31, 106 S.Ct. at 664 (leaving of a pillow on prison stairs amounted to negligence but did not violate due process). The state actor must have exercised his state powers in "an arbitrary or abusive manner given the circumstances of the case." *Archie,* 826 F.2d at 488. However, since 1986, we have implicitly reaffirmed the reasoning of *Brishke* and other circuits have adopted our reasoning when considering an officer's duty to intervene. *See Rascon v. Hardiman,* 803 F.2d 269, 276 (7th Cir.1986) (and cases cited therein); *see also Anderson v. Branen,* 17 F.3d 552, 556 (2nd Cir.1994) (and cases cited therein).

been within Hardin's reasonable discretion to decline to draw his gun against Brown, who as a police officer, arguably constituted an unusually adept and armed criminal.

■ The district court found that no evidence existed "from which [it] could conclude that any action on the part of Hardin would have had any effect on Brown once that car started up." (Tr. at 10). The court found several justifications in support of Officer Hardin's inaction. The court posited that a shooting could have resulted. (Tr. at 12). Or, "three people could have been killed [ ] if the wrong move had been made." (Tr. at 14). In the context of a default judgment, the district court is obliged to accept as true all facts alleged by the plaintiff and all reasonable inferences contained therein. *See Black v. Lane*, 22 F.3d 1395, 1399 & 1403 (7th Cir.1994). This circuit follows the rule that "the well-pleaded allegations of the complaint relating to liability are taken as true," *Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 253 (7th Cir.1990), and only those relating to the amount of damages suffered must be proved. *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir.1988). The purpose of the summation proceeding was, thus, to prove damages, not to ponder the probability of success of the various actions that Officer Hardin could have taken. If Hardin had not defaulted, he could have offered evidence either that there was no reasonable opportunity for intervention or no reasonable method by which to intervene. However, absent such evidence, the existence of a reasonable time for intervention and a reasonable probability of success, which flows from the facts set out in the complaint, will be presumed true. Accordingly, the district court erred by making factual findings contrary to the uncontested facts.

■ Additionally, we take issue with the district court's distinction between the Rodney King situation and that which befell Yang—that Yang's situation involved "a moving car [ ] with a wild man at the wheel acting in an irrational and highly agitated way," and that "careening down the street in a swerving automobile is a different situation than being a bystander at a beating with, incidentally, lots of reinforcements there."

(Tr. at 13, 14–15). The district court reasoned that in the King case as opposed to Yang's, "[i]t wasn't one officer who could have stopped Powell, there was a dozen standing there." (Tr. at 15). The number of officers present and able to intervene to save an innocent person from unconstitutional summary punishment inflicted by a fellow officer, in no way correlates with any one officer's duty to intercede. Each police officer present has an independent duty to act.

**B.** *Supplemental State Common Law Claims*

■ In addition to the § 1983 violations, the district court also found Officer Hardin not liable on the common law counts. On appeal, Yang pursues only the claims of false imprisonment and assault. Under the uncontested facts, Officer Hardin falsely imprisoned Yang when he restrained his movement at gunpoint. "False imprisonment consists of an unlawful restraint, against his will, of an individual's personal liberty or freedom of locomotion." *Dutton v. Roo–Mac, Inc.*, 100 Ill.App.3d 116, 55 Ill.Dec. 458, 461, 426 N.E.2d 604, 607 (1981); *see also Meerbrey v. Marshall Field and Co., Inc.*, 139 Ill.2d 455, 151 Ill.Dec. 560, 569, 564 N.E.2d 1222, 1231 (1990). A default judgment establishes *as a matter of law* that the defendant is liable. *Black*, 22 F.3d at 1399. Accordingly, absent contrary evidence, the ruling by the district court in favor of Hardin on this count is clearly erroneous.

■ For civil liability, an assault constitutes "an intentional, unlawful offer of corporal injury by force, or force unlawfully directed, under such circumstances as to create a well-founded fear of imminent peril, coupled with the apparent present ability to effectuate the attempt if not prevented." *Parrish by Bowker v. Donahue*, 110 Ill. App.3d 1081, 66 Ill.Dec. 860, 862, 443 N.E.2d 786, 788 (1982). Where a criminal court found Officer Hardin guilty of criminal assault, the same uncontested facts amount to a civil assault. *See Shelter Mutual Ins. Co. v. Bailey*, 160 Ill.App.3d 146, 112 Ill.Dec. 76, 85, 513 N.E.2d 490, 498 (1987) (defendant's conviction of a criminal battery constitutes reli-

able evidence of a tortious act). Accordingly, we reverse on this count as well.

### Conclusion

For the foregoing reasons, we reverse the ruling of the district court and remand for determination of damages against Officer Hardin. Yang urges this court to hold Officer Hardin liable for Yang's damages of $229,658.10 less the $50,000 punitive damages award against Officer Brown. However, the issue of joint and several liability is a factual determination for the district court. *Watts v. Laurent*, 774 F.2d 168, 179–81 (7th Cir.1985), *cert. denied*, 475 U.S. 1085, 106 S.Ct. 1466, 89 L.Ed.2d 722 (1986).