In the

# United States Court of Appeals

## For the Seventh Circuit

No. 02-2363

CHAUNCE WINDLE,

*Plaintiff-Appellant*,

*v.*

CITY OF MARION, INDIANA, a municipal corporation,
CITY OF MARION, INDIANA, POLICE DEPARTMENT,
and ROB RAYMER, SERGEANT, in his official and
individual capacity,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 1:00 CV 0468—**William C. Lee**, *Judge*.

ARGUED JANUARY 8, 2003—DECIDED MARCH 3, 2003

Before FLAUM, *Chief Judge*, and EASTERBROOK and
DIANE P. WOOD, *Circuit Judges*.

FLAUM, *Chief Judge*. Chaunce Windle ("Chaunce"), a
minor student, was sexually molested by Carol Rigsbee
("Rigsbee"), then a middle school music teacher in Marion,
Indiana. After the ongoing and inappropriate relation-
ship between Rigsbee and Chaunce came to light, Rigsbee
was prosecuted for child molestation. The case before us
today is about the Marion Police Department's response to
their knowledge of this improper relationship. Chaunce
has brought this 42 U.S.C. § 1983 claim against Sergeant

Rob Raymer and the City of Marion for allegedly violating her due process rights by not intervening to protect her from the molestation that they were aware was occurring. The district court granted the defendants' motion for summary judgment. For the reasons stated herein, we affirm.

## I. Background

Sometime in 1997 certain officers at the Marion Police Department began intercepting cellular phone conversations between Chaunce and Rigsbee on their scanners. These conversations evidenced an ongoing sexual relationship between Chaunce and Rigsbee, who had come to know Chaunce both through school and through private music lessons.

At first the officers who intercepted the calls thought they were listening to conversations between two lesbian lovers about their relationship. A possible implication from the record and from Chaunce's allegations is that the officers continued to listen to the conversations for the sake of personal entertainment. In late September or early October of 1997, Sergeant Raymer was informed by the officers of these conversations. Raymer personally intercepted several of the conversations over the next two months. Raymer became concerned when the content of the conversations revealed to him that the participants were an older female who was a middle school teacher and a younger female who was a student. At some point, the officers, including Raymer, became aware of the fact that the younger female's first name was Chaunce.

One might anticipate that a police officer armed with this information would have aggressively investigated and intervened in an attempt to protect the well-being of the minor female. Indeed, given the uncommonness of the name Chaunce and the fact that some of the officers

in the department knew her father and were aware of the existence of a Chaunce Windle, it appears this case would not have required a great deal of further investigative effort. Nonetheless, Raymer took no intervening action for about two months. Only when Raymer intercepted a phone conversation on November 24, 1997, that led him to believe that Chaunce was in danger of doing something drastic and was possibly suicidal did he decide to act. The next day he went to Kent Cocking, a school counselor at Tucker Middle School. Cocking and Raymer then spoke to Chaunce's father, Rich Windle. Raymer then spoke with Rigsbee, who admitted to molesting Chaunce. On December 2, 1997, Raymer submitted an incident report. This was the first written report filed regarding these events. Rigsbee's prosecution followed.

Chaunce brought this § 1983 suit claiming that Raymer, and the City of Marion, violated her due process rights in failing to protect her from the acts of Rigsbee. The district court held that Chaunce's allegations do not support a claim under § 1983 and granted the defendants' motion for summary judgment. Chaunce appeals.

## II. Discussion

We review a district court's grant of summary judgment *de novo*. *Dykema v. Skoumal*, 261 F.3d 701, 704 (7th Cir. 2001). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Tesch v. County of Green Lake*, 157 F.3d 465, 471 (7th Cir. 1998). Therefore we must examine Chaunce's allegations to see whether the facts, construed in the light most favorable to her, establish an actionable claim under § 1983. To succeed on such a claim a plaintiff must show that: (1) the defendant deprived the plaintiff of a right secured by the Constitution and laws of the United States, and (2)

the defendant acted under color of state law. *Reed v. City of Chicago*, 77 F.3d 1049, 1051 (7th Cir. 1996). The second requirement is not at issue in this case.

As to the first requirement, Chaunce claims that Raymer's inaction violated her due process rights. Generally, failure to protect does not rise to the level of a constitutional violation. *See DeShaney v. Winnebago County Dept. of Soc. Serv.*, 489 U.S. 189 (1989). Recognizing this, Chaunce tries to fit her claim against Raymer into the "state-created danger exception." This approach arises out of the Supreme Court's opinion in *DeShaney*. While the Court in *DeShaney* held that a failure to protect was not a constitutional violation, it also suggested that a different outcome might result where the state has created or exacerbated the danger from which it failed to protect the victim. The Court stated: "While the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them." *Id.* at 201. Drawing on this language the lower courts have fashioned the "state-created danger exception." *See*, *e.g.*, *Reed v. Gardner*, 986 F.2d 1122, 1125 (7th Cir. 1993); *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992).

The facts in *Monfils v. Taylor*, 165 F.3d 511 (7th Cir. 1998), provide an example of the kind of behavior that falls under this exception. Thomas Monfils provided an anonymous tip to the police about the criminal activity of one of his co-workers. Monfils requested that the tape of his tip not be released because he feared violent retaliation. He was assured that it would not be released. Still the police released the tape to the accused co-worker who recognized Monfils's voice. Monfils was subsequently murdered by his co-workers. This court found an actionable claim under the state-created danger exception because the state placed Monfils in an increased position

of danger and failed to protect him from that danger. *Monfils*, 165 F.3d at 517.

Appellant tries to liken the behavior of Raymer and the Marion Police in this case to the behavior that created the danger in *Monfils*. We find this argument unpersuasive. *Monfils*, along with our other cases dealing with this issue, suggest that the key question in determining whether state behavior violated the victim's constitutional rights is: "What actions did [the state actor] affirmatively take, and what dangers would [the victim] otherwise have faced?" *Id.* (quoting *Wallace v. Adkins*, 115 F.3d 427, 430 (7th Cir. 1997)); *see also Dykema*, 261 F.3d at 706. In *Monfils* we looked at the state's affirmative action of releasing the tape and the fact that, had the state not released the tape, Monfils would have faced considerably less danger. Therefore, the state enhanced the danger and by failing to protect Monfils from that danger, it violated his due process rights. With this analysis in mind Appellant attempts to show that Raymer took an affirmative action, even though he plainly did not.[1] She characterizes Raymer's inaction as an affirmative choice, using phrases like "affirmatively choosing to stand idle" and "affirmatively chose not to take action" throughout her brief. We find this line of argument lacking and not in accord with our understanding of "taking an action affirmatively."[2]

---

[1] In the text we discuss why the actions Appellant argues are affirmative are not. While it is true that the state did take some affirmative actions like continuing to listen to conversations, or in the end finally assisting the victim, Appellant wisely does not argue that these could possibly have increased her level of danger.

[2] The term "affirmative act" suggests a willful deviation from the *status quo*. Thus an affirmative act will have as a counterpoint a non-affirmative position. Typically, this involves inaction. Here Appellant posits a situation where not acting was

(continued...)

Even if one were to construe the conduct of the officers as some sort of affirmative action, we must then ask what new danger would have otherwise befallen the victim. If Raymer, under Appellant's theory, had not taken the so-called affirmative action of doing nothing and had done something, we have no way of knowing what would have occurred. Indeed, the police might have failed at protecting Chaunce. We therefore have no assurance that the danger would not have existed in the absence of the so-called affirmative action of doing nothing.

In focusing exclusively on whether the police acted affirmatively, Appellant fails to grasp that she has to establish that the police failed to protect her from a danger *they created or made worse*. She confuses the inert failure to protect with the proactive creation or exacerbation of danger. In this case the police did nothing to create a danger, nor did they do anything to make worse any danger Chaunce already faced.[3] If the police had never overheard the conversation, and had never been involved at all, the danger faced by Chaunce would likely have been the same or perhaps worse. The police did not

---

[2] (...continued)
an affirmative act and therefore the police were faced with the choice between affirmatively choosing to do nothing and affirmatively doing something. Under this scenario there is no non-affirmative position for the police to have taken. This is simply illogical.

[3] In her reply brief and in rebuttal at oral arguments, Appellant mentions that certain officers in the Marion Police Department who were concerned about the abuse of Chaunce were dissuaded from protecting her by Raymer and others. This argument is mentioned only in passing in two paragraphs of Appellant's reply brief. As such we find the argument waived and do not address the question of whether a constitutional violation would exist where one member of a law enforcement unit discouraged or prevented another from protecting a victim.

place Chaunce in the custody of Rigsbee, and they did nothing to assist Rigsbee. They just failed to intervene until Raymer thought that matters had reached a crisis. This case is indistinguishable from *DeShaney* where the Supreme Court concluded that no constitutional violation had occurred when state actors who may have been aware that a child was being abused by his father did nothing to protect the child. *Deshaney*, 489 U.S. at 201.

Appellant attempts to salvage her constitutional claims by alleging that the police violated their duty under an Indiana statute. With nothing more to go on than a state statute, she cannot succeed in saving her claim. State law violations do not form the basis for imposing § 1983 liability. *Estate of Novack v. County of Wood*, 226 F.3d 525, 531-32 (7th Cir. 2000); *see also White v. Olig*, 56 F.3d 817, 820 (7th Cir. 1995) ("It is therefore a truism, reiterated many times by this court, that mere allegations of state law infraction are insufficient to support a Section 1983 claim.").

Finally, we note that this opinion addresses liability when Raymer and the Marion Police are the relevant state actors. Appellant has not included in this suit a claim against Rigsbee, who as a teacher could also be considered a state actor. Rigsbee's status as a potential state actor does however raise one important question regarding the duties of the Marion Police. In certain cases liability under § 1983 may exist when one state actor fails to intervene to prevent another state actor from causing direct harm to a victim. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Just such a case can exist when one law enforcement officer has reason to know "that any constitutional violation has been committed by [another] law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Id*. Liability under this theory is certainly not limited to the context of a police officer's relationship with other officers in her department; but on the other hand

the rule is not so broad as to place a responsibility on every government employee to intervene in the acts of all other government employees. In the instant case there appears no particular governmental connection between Rigsbee and the Marion Police. Appellant has not alleged that the Marion Police have any authority over teachers that they do not have over any other citizen of Marion or that they share any joint responsibility with school officials. To be sure, we are not today deciding a case where an employee of one government entity failed to intervene to prevent harm by an employee of another entity where the two entities shared, in practice, some relationship. Against the background of this case, *Yang* does not apply.

As for the claim of municipal liability, a plaintiff must prove that the individual officers are liable on the underlying substantive claim in order to recover damages from a municipality under either a failure to train or failure to implement theory. *Tesch v. County of Green Lake*, 157 F.3d 465, 477 (7th Cir. 1998). Having determined that Chaunce did not suffer a constitutional violation from the inaction of Raymer or any other police officer in Marion, we must conclude that the City of Marion cannot be held liable for a failure to train or a failure to institute a policy.

### III. Conclusion

As regrettable as the delayed reaction of Sergeant Raymer and the Marion Police Department may have been, it did not violate any constitutional rights of Chaunce Windle. That being the case the district court appropriately granted summary judgment in favor of Raymer and the City of Marion in this § 1983 suit. The judgment of the district court is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*